# IN THE
# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT CHATTANOOGA

JANE DOE, A MINOR STUDENT, BY AND THROUGH HER PARENTS AND NEXT FRIENDS, JANET DOE AND JOHN DOE,

*Plaintiffs,*

v.

CLEVELAND CITY SCHOOLS BOARD OF EDUCATION; CLEVELAND MIDDLE SCHOOL; MS. LENEDA LAING, IN HER INDIVIDUAL CAPACITY AS PRINCIPAL OF CLEVELAND MIDDLE SCHOOL; MS. STEPHANIE PIRKLE, IN HER INDIVIDUAL CAPACITY AS VICE-PRINCIPAL OF CLEVELAND MIDDLE SCHOOL; MR. RAUL CRUZ, IN HIS INDIVIDUAL CAPACITY AS THE SCHOOL RESOURCE OFFICER OF CLEVELAND MIDDLE SCHOOL; MS. LAUREN LASTORIA, IN HER INDIVIDUAL CAPACITY AS THE 6TH GRADE COUNSELOR AT CLEVELAND MIDDLE SCHOOL; MS. TERRY ESQUIANCE, IN HER INDIVIDUAL CAPACITY AS JANE DOE'S HOMEROOM TEACHER; AND MS. ASHLEY KEITH, IN HER INDIVIDUAL CAPACITY AS JANE DOE'S MATH TEACHER;

*Defendants.*

No. 1:20-CV-347

The Honorable Judge _____

**JURY IS DEMANDED**

**COMPLAINT**

**COME THE PLAINTIFFS**, Jane Doe[1], a minor student, by and through her parents and next friends, Janet Doe and John Doe, who also bring this cause of action in their individual capacities. They show for their Complaint:

---

[1] The placeholder "Jane Doe" is being used so as to protect the identity of a minor child. Likewise, placeholders are used for said minor's parents so as to ensure the same.

1

Case 1:20-cv-00347-TRM-SKL   Document 1   Filed 12/11/20   Page 1 of 14   PageID #: 1

## I. INTRODUCTION

1. This lawsuit arises from the Defendants' deliberate indifference to extreme student-on-student sexual harassment, sexual assault, and bullying. Defendants' history of failure to take appropriate preventive measures, failure to adequately respond to the events described herein, failure to adequately investigate said events, failure to observe Title IX requirements, and failure to offer appropriate assistance to the victim, all implicate civil rights violations, as well as the denial of educational opportunities. This action alleges violations of Title IX, denial of equal protection of the laws under the Fourteenth Amendment to the United States Constitution, and violation of State tort laws.

## II. PARTIES

2. Jane Doe is a minor and a citizen of Bradley County, Tennessee, where she resides with her mother and next friend, Janet Doe, and stepfather, John Doe.

3. The Cleveland City Schools Board of Education (hereinafter, "CCSBE") is a governmental entity charged with managing public schools in Cleveland, Tennessee. It is a recipient of federal funds.

4. Cleveland Middle School (hereinafter, "CMS") is governed, regulated, and controlled by CCSBE.

5. Defendants Terry Esquinance, Ashley Keith, Stephanie Pirkle, Lauren Lastoria, Raul Cruz, and Leneda Laing are all employed by CMS.

6. Defendant Esquinance, in her individual capacity, acted as the homeroom teacher for Jane Doe.

7. Defendant Laing, in her individual capacity, acted as Principal for CMS.

8. Defendant Pirkle, in her individual capacity, acted as Vice-Principal of CMS.

9. Defendant Lastoria, in her individual capacity, acted as the 6th grade counselor.

10. Defendant Cruz, in his individual capacity, acted as the School Resource Officer for CMS.

11. Defendant Keith, in her individual capacity, acted as Jane Doe's math teacher.

### III. JURISDICTION

12. The Court's jurisdiction is invoked pursuant to 28 U.S.C. § 1331, Title IX (the Education Amendments Act, 20 U.S.C. § 1681), and the Fourteenth Amendment to the United States Constitution, through 42 U.S.C. § 1983. The Court also has jurisdiction under 28 U.S.C. § 1343. The Court has supplemental jurisdiction over state law claims through 28 U.S.C. § 1367 because the State law claims are so related to Plaintiffs' claims under Title IX, Fourteenth Amendment, and § 1983 claims that they form part of the same case or controversy under Article III of the United States Constitution.

13. Venue is proper under 28 U.S.C. §1391(b), as all of the Defendants reside or may be found in Bradley County and the acts or omissions complained of herein occurred in Bradley County, located in the Eastern District of Tennessee.

### IV. FACTS

14. On or about Monday, September 23, 2019, Janet Doe received a call from the Department of Children's Services (hereinafter, "DCS") while at work.

15. Once Janet Doe was able to return the call, she was advised to go to the DCS office so as to discuss the safety of Jane Doe.

16. Janet Doe was completely unaware as to the matter the DCS representative wished to discuss, as no concerns as to the safety of Jane Doe had been raised previously, by DCS or otherwise.

17. Upon receiving this call, Janet Doe, panic-stricken and completely unaware as to the reason for the requested meeting, contacted her husband John Doe, Jane Doe's stepfather, as well as Richard Doe, Jane's biological father, requesting they attend the meeting as well.

18. Upon meeting with DCS, began to refer to the assault occurring the week prior on September 18, 2019.

19. Shocked and dismayed, they stated to the DCS representative that they were unaware of such an event.

20. The DCS representative advised the three that DCS had been alerted that Jane Doe was the victim of a sexual assault by another student, which occurred on school premises.

21. They were further advised the assailant had been taken to juvenile court and separated from the general student populace, and placed in "Raider Academy," the functional equivalent of what one might refer to as "alternative school."

22. Further, the DCS representative advised that not only had the assailant sexually assaulted Jane Doe, he threatened the other children who had witnessed the misconduct with physical violence should they disclose what they had witnessed.

23. Again, this was the very first time Jane Doe's parents had even heard mention of the aforementioned sexual assault.

24. The DCS representative then scheduled wellness checks to examine all three parents' homes, to which they had no objection, willfully allowing the DCS representative to conduct her investigation to the extent to which she felt necessary.

25. Additionally, the DCS representative scheduled appointments with Janet Doe's other children to ensure their safety, as well.

26. Shockingly, the DCS representative advised Jane Doe's parents that CMS had required Jane Doe to write out and execute a statement as to the events that transpired in the absence of a parent or guardian.

27. Again, at no point had Jane Doe's parents been advised by CMS as to the incident involving their daughter, a fact that "shocked" the DCS representative.

28. The very next day, Janet and John Doe received a Mutual No Contact Order. They had no knowledge as to the reason for its issuance.

29. Much to the dismay of Plaintiffs and counsel, this No Contact Order was issued and entered on the 19th Day of September, the week prior to Jane Doe's parents being made aware that the sexual assault had even occurred.

30. The parents allowed Jane Doe to divulge the details of the sexual assault in her own time, and eventually it was discovered that this assault was not merely a "pat on the bottom," contrary to the account given to the DCS representative by CMS.

31. Instead, it was discovered that not only was the assault of a sexual nature, such was done forcefully, with Jane Doe being shoved up against a locker, molested, and brutalized, resulting in physical injuries from which Jane Doe had to recover more than a week after the assault. Her psychological injuries remain with her and shall remain for the foreseeable future.

32. The Friday of the same week, Jane Doe called her mother, Janet Doe, requesting that she be picked up from school for fear of being sexually brutalized yet again by her assailant.

33. Janet Doe advised she was safe due to the Mutual No Contact Order; however, this did little to quell Jane Doe's deep-seated fear and trepidation.

34. On October 2, 2020, John Doe was served with a subpoena dated the 27th day

of September 2019, requiring their presence at a hearing scheduled for December 12, 2020 to take place at Bradley County Juvenile Court, Case No. 19-00834.

35. On or about November 2, 2019, Janet Doe received an email from a teacher of Jane Doe, requesting a meeting, stating Jane Doe was failing all of her classes.

36. The teachers at said meeting advised that Jane Doe was smart and capable, yet she was failing to submit her homework and was "not trying" in class.

37. After discussing Jane Doe's poor academic performance, the matter of Jane Doe's sexual assault arose.

38. For the *very first time*, Janet and John Doe were advised that a sexual assault, had, in fact, occurred. This was the first instance in which *anyone* from CMS even acknowledged the assault, teacher or otherwise.

39. During the conference, one (1) of the three (3) teachers present advised that she was the one to take Jane Doe to CMS office following said sexual assault.

40. This teacher informed Jane Doe's parents that she was not the one to report the assault. Instead, the assault was reported by one of Jane's friends.

41. Additionally, said teacher advised that not only was Jane Doe in fear for her safety, but *all* of the students were afraid of the assailant.

42. Again, Janet and John Doe were stunned by the fact that all three (3) of the teachers with whom they met were aware of their daughter's assault, and yet none of them, or any other representative of CMS, considered it important enough to bring it to their attention.

43. Janet Doe advised these three (3) teachers that all three (3) of the parents were unaware of the assault until they were confronted by DCS five (5) days after the event in question, and several days after the Mutual No Contact Order had been issued.

44. At the court date on December 12, 2019, Jane Doe displayed signs of fear, trepidation, overwhelming anxiety, embarrassment, and desire not to even be party to the proceeding, despite being the actual victim, and did not want to lay eyes upon her assailant.

45. At said hearing, the Assistant District Attorney assigned to the matter, with the assailant's file in hand, advised Janet and John Doe that their daughter's assailant already had an extensive record despite only being eleven (11) years of age at the time.

46. As of the date of this hearing, the assailant had failed to comply with Court-Ordered counseling.

47. The Assistant District Attorney advised that the Court would issue an additional Order regarding the assailant's counseling, especially considering *this was not the first time the assailant had sexually assaulted Jane*.

48. This was the first time Janet and John Doe were made aware that, not only had their daughter been sexually assaulted and CMS had concealed the same, their daughter had been sexually assaulted by the same assailant *multiple* times.

49. Yet again, Janet and John Doe were made aware that CMS had kept them in the dark as to the sexual assaults on their daughter, concealing their culpability.

50. Subsequent to this, the Assistant District Attorney advised a representative from CMS that Janet and John Doe had not been contacted by CMS, which he represented he would address. However, yet again, at no point were the parents of Jane Doe contacted by *any* representative from CMS.

51. Jane Doe began exhibiting signs of severe depression, anxiety, and became withdrawn. This caused Janet and John Doe to become fearful Jane may wish to harm herself.

52. Understandably, this entire ordeal resulted in not only mental anguish for Jane

Doe, but also for her parents, who felt they were unable to protect their own child.

53. CMS denied Janet and John Doe an opportunity to protect their child.

54. At no point did CMS attempt to separate Jane Doe from her assailant, resulting in additional emotional distress for Jane.

55. At no point did CMS advise Janet and John Doe of the repeated sexual assaults of their daughter by another student.

56. The actions and inactions of CMS resulted in physical and emotional trauma suffered by not only Jane Doe, but also by her parents.

57. Subsequently, Jane Doe began counseling at Hiwassee Mental Health, at which she was diagnosed with Post-Traumatic Stress Disorder. Accordingly, Jane Doe was prescribed medications so as to alleviate at least some of the symptoms which are the byproduct of the repeated sexual assaults.

58. Likewise, both Janet and John Doe have begun counseling, and both have been prescribed antidepressants and anti-anxiety medications.

59. Shockingly, on October 19, 2020, frantic and emotionally distraught, Jane Doe placed a call to John Doe, stating CCSBE and CMS had placed her assailant in the *very same class* as Jane Doe, resulting in further emotional trauma, forcing her to relive the events of the past while fearing another sexual assault.

60. This further exemplifies callous and intentional indifference of CCSBE and CMS.

61. These Defendants had actual knowledge of the multiple sexual assaults, and deliberately turned an indifferent eye to pervasive, repeated, egregious, and foreseeable sexual assaults of this child.

## V. CAUSES OF ACTION

62. Plaintiffs bring the following causes of action in the counts below.

### COUNT I. TITLE IX – CCSBE AND CMS

63. The foregoing factual averments are incorporated herein as though rewritten verbatim.

64. The sex-based harassment of the Plaintiff Jane Doe was severe, pervasive, and objectively offensive, and deprived Jane Doe of access to educational opportunities or benefits.

65. CCSBE and CMS created, tolerated, and subjected Jane Doe to a hostile educational environment under Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 681(a), because Plaintiff Jane Doe was treated disparately based upon her gender; suffered sexual assault and other harassment; and CCSBE and CMS had a lack of adequate policies, training, and procedures, and deliberately failed to take appropriate preventive or remedial measures.

66. Moreover, CCSBE, CMS, and their officials and employees had actual knowledge of the harassment and chose not to seriously investigate or discipline the perpetrator.

67. CCSBE, CMS, its officials, and employees engaged and employees in a pattern of behavior, a cover-up, to discourage students from reporting the sexual assaults.

### COUNT II. TITLE IX RETALIATION BY WITHHOLDING PROTECTIONS — CCSBE AND CMS

68. The foregoing factual averments are incorporated herein as though rewritten verbatim.

69. CCSBE and CMS officials discouraged those with actual information of the

sexual assaults from reporting to appropriate authorities and failed to report the sexual assaults to Doe's parents.

70. Once law enforcement became involved, CCSBE, CMS, and its officials ignored the matter altogether, feigning as though the assault never happened, and refused to investigate the matter or otherwise comply with responsibilities of Title IX.

71. Even when CCSBE and CMS's deception had been revealed, they nonetheless still refused to acknowledge the assault or contact the parents of Jane Doe, much less take steps to remedy the situation.

### COUNT III. VIOLATION OF THE FOURTEENTH AMENDMENT AND SECTION 1983 — ALL DEFENDANTS

72. The foregoing factual averments are incorporated herein as though rewritten verbatim.

73. Plaintiff Jane Doe enjoys the right as an American public-school student to personal security, bodily integrity, and Equal Protection of the Laws.

74. Defendants Esquinance, Keith, Pirkle, Lastoria, Cruz, and Laing were all State actors acting under color of State law.

75. All defendants subjected Plaintiff Jane Doe to violations of her right to bodily integrity and Equal Protection of the Laws by failing to take appropriate preventive measures; failing to adequately supervise and train (or engage in supervision); and by acting with manifest indifference to the sexual assault, bullying, and harassment of Jane Doe.

76. The actions of CCSBE and CMS were taken pursuant to customs, policies, or practices of failing to investigate, failing to adequately train and supervise, and a historical indifference to the bodily integrity of students.

77. Defendants Esquinance, Keith, Pirkle, Lastoria, Cruz, and Laing were

considered policymakers for the purpose of implementing and carrying on the aforesaid policies, customs, or practices.

### COUNT IV. MONELL LIABILITY FOR FAILURE TO TRAIN AND SUPERVISE (42 U.S.C. § 1983) — ALL DEFENDANTS

78. The foregoing factual averments are incorporated herein as though rewritten verbatim.

79. Defendants Esquinance, Keith, Pirkle, Lastoria, Cruz, and Laing were state actors working for CCSBE and CME. They worked under "color of state law" in failing to appropriately prevent or remedy the sexual assaults.

80. Each defendant named herein violated Jane Doe's right to equal access to an environment free from harassment and sexual assault, due to a policy or custom of failing to investigate, failing to take prompt remedial measures, failing to protect Jane Doe, failing to provide a grievance procedure widely disseminated and capable of being understood, and failing to notify Jane Doe's parents of the harassment and sexual assault, and acting with deliberate indifference to violence against Jane Doe. These failures proximately caused the injuries sustained by Jane Doe.

81. Additionally, CCSBE and SME violated Plaintiffs' Fourteen Amendment right to equal protection by failing to properly train and supervise its employees in mandated investigative requirements.

82. The need to train its principal, vice-principal, teachers, counselors, SROs, and Title IX Coordinator is so obvious, and the inadequacy so likely to result in violation of constitutional rights, that CCSBE and CMS were deliberately indifferent and acted pursuant to a policy or custom of indifference to violence against its students. These failures proximately caused the injuries to Jane Doe.

## COUNT V. NEGLIGENT OR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS — (ALL DEFENDANTS)

83. The foregoing factual averments are incorporated herein as though rewritten verbatim.

84. Defendants acted with intentional indifference to the multiple sexual assaults of Jane Doe, failing to report the same to Jane Doe's parents, take appropriate remedial and preventative measures.

85. Defendants' failure to protect a minor child from sexual assault, with full knowledge of said assault, and failure to notify the parents of the minor victim as to the same is so outrageous that such is not tolerated by society.

86. The negligent and intentional actions of the defendants resulted in severe, pervasive, and extensive emotional trauma in Jane Doe, Janet Doe, and John Doe.

87. The negligent and intentional actions of the defendants is both the actual and proximate cause of the emotional distress sustained by Plaintiffs.

## COUNT VI. NEGLIGENCE PER SE — (ALL DEFENDANTS)

88. Defendants' failure to notify Janet and John Doe of the multiple sexual assaults of their daughter is a violation of Tenn. Code Ann. § 37-1-605.

89. Tenn. Code Ann. § 37-1-605 was intended to ensure parents are advised of any sexual assault of their child in a timely manner, so as to afford the parents to take appropriate action.

90. Defendants' failure to uphold this statutory obligation is the actual and proximate cause of the mental distress and anguish of Plaintiffs. The failure of Defendants' to advise Janet and John Doe of their daughter's assault resulted their inability to take measure to ensure their daughter's safety, ultimately resulting in additional sexual assaults of Jane Doe.

## COUNT VII. VIOLATION OF THE TENNESSEE GOVERNMENTAL TORT LIABILITY ACT — (ALL DEFENDANTS)

91. The foregoing factual averments are incorporated herein as though rewritten verbatim.

92. Based upon the foregoing, Plaintiffs bring claims against all Defendants for their negligence, negligent supervision, negligent failure to train, and negligence per se, under the Tennessee Governmental Tort Liability Act, as found at Tenn. Code Ann. § 29-20-101, et seq.

93. For the totality of their claims, Plaintiffs seek five million dollars ($5,000,000.00) in compensatory damages, and five million dollars ($5,000,000.00) in punitive damages.

94. In sum, Plaintiffs seek as damages payment appropriate for the mental suffering and pain for Jane Doe; payment appropriate for the mental suffering and pain for Janet Doe; payment appropriate for the mental suffering and pain for John Doe; payment of the costs of private education; reasonable attorneys' fees and costs; punitive damages against the individual defendants; injunctive relief to include appropriate policies, training, supervision, reporting requirements, observance of duties of Title IX officials, and monitoring; and any further relief at law or equity which may be appropriate.

95. Plaintiffs demand a jury be empaneled to try this Cause.

Respectfully submitted,

*/s:/ J. Taylor Thomas*
J. Taylor Thomas, BPR #036278
*Attorney for Plaintiffs*
Tallan Financial Center
200 W. Martin Luther King Blvd., Ste. 1000
Chattanooga, TN 37402
Phone: (423) 732-8005
Facsimile: (423) 723-8010
Email: taylor@jtthomaslaw.com

*/s:/ Russell Leonard*
Russell L Leonard, BPR #01491
*Attorney for Plaintiffs*
1016 W. Main St., Suite 3,
Monteagle, TN 37356
(931) 924-0447