# IN THE
# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT CHATTANOOGA

A.T., A MINOR STUDENT, BY AND THROUGH HER PARENTS AND NEXT FRIENDS, B.G. AND J.G.,

*Plaintiffs,*

v.

CLEVELAND CITY SCHOOLS BOARD OF EDUCATION; CLEVELAND MIDDLE SCHOOL; MS. LENEDA LAING, IN HER INDIVIDUAL CAPACITY AS PRINCIPAL OF CLEVELAND MIDDLE SCHOOL; MS. STEPHANIE PIRKLE, IN HER INDIVIDUAL CAPACITY AS VICE-PRINCIPAL OF CLEVELAND MIDDLE SCHOOL; MR. RAUL CRUZ, IN HIS INDIVIDUAL CAPACITY AS THE SCHOOL RESOURCE OFFICER OF CLEVELAND MIDDLE SCHOOL; MS. LAUREN LASTORIA, IN HER INDIVIDUAL CAPACITY AS THE 6TH GRADE COUNSELOR AT CLEVELAND MIDDLE SCHOOL; MS. TERRY ESQUIANCE, IN HER INDIVIDUAL CAPACITY AS A.T.'S HOMEROOM TEACHER; AND MS. ASHLEY KEITH, IN HER INDIVIDUAL CAPACITY AS A.T.'S MATH TEACHER;

*Defendants.*

No. 1:20-CV-347

The Honorable Travis R. McDonough

**JURY IS DEMANDED**

**AMENDED COMPLAINT**

**COME THE PLAINTIFFS**, A.T.[1], a minor student, by and through her parents and next friends, B.G. and J.G., who also bring this cause of action in their individual capacities. They show for their Complaint:

---

[1] The placeholder "A.T." is being used so as to protect the identity of a minor child. Likewise, placeholders are used for said minor's parents so as to ensure the same.

1

## I. INTRODUCTION

1. This lawsuit arises from the Defendants' deliberate indifference to extreme student-on-student sexual harassment, sexual assault, sexual battery, and bullying. Defendants' history of failure to take appropriate preventive measures, failure to adequately respond to the events described herein, failure to adequately investigate said events, failure to observe Title IX requirements, and failure to offer appropriate assistance to the victim, all implicate civil rights violations, as well as the denial of educational opportunities. This action alleges violations of Title IX, denial of equal protection of the laws under the Fourteenth Amendment to the United States Constitution, and violation of State tort laws.

## II. PARTIES

2. A.T. is a minor child and a citizen of Bradley County, Tennessee, where she resides with her mother and next friend, B.G., and stepfather, J.G.

3. The Cleveland City Schools Board of Education (hereinafter, "CCSBE") is a governmental entity charged with managing public schools in Cleveland, Tennessee. It is a recipient of federal funds.

4. Cleveland Middle School (hereinafter, "CMS") is governed, regulated, and controlled by CCSBE.

5. Defendants Terry Esquinance, Ashley Keith, Stephanie Pirkle, Lauren Lastoria, Raul Cruz, and Leneda Laing are all employed by CMS.

6. Defendant Esquinance, in her individual capacity, acted as the homeroom teacher for A.T.

7. Defendant Laing, in her individual capacity, acted as Principal for CMS.

8. Defendant Pirkle, in her individual capacity, acted as Vice-Principal of CMS.

9. Defendant Lastoria, in her individual capacity, acted as the 6th grade counselor.

10. Defendant Cruz, in his individual capacity, acted as the School Resource Officer for CMS.

11. Defendant Keith, in her individual capacity, acted as A.T.'s math teacher.

12. All individual Defendants named herein are, to the best of your Plaintiffs' understanding and belief, citizens and residents of the State of Tennessee, but whose residential addresses are presently unknown.

### III. JURISDICTION

13. The Court's jurisdiction is invoked pursuant to 28 U.S.C. § 1331, Title IX (the Education Amendments Act, 20 U.S.C. § 1681), and the Fourteenth Amendment to the United States Constitution, through 42 U.S.C. § 1983. The Court also has jurisdiction pursuant to 28 U.S.C. § 1343. The Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367 because the State law claims are so related to Plaintiffs' claims under Title IX, the Fourteenth Amendment of the Constitution of the United States, and § 1983, that they form part of the same case or controversy under Article III of the Constitution of the United States.

14. Venue is proper pursuant to 28 U.S.C. § 1391(b), as all of the Defendants reside or may be found in Bradley County and the acts or omissions complained of herein occurred in Bradley County, located in the Eastern District of Tennessee.

### IV. FACTS

15. On or about Monday, September 23, 2019, B.G. received a call from the Department of Children's Services (hereinafter, "DCS") while at work.

16. Once B.G. was able to return the call, she was advised to go to the DCS office

so as to discuss the safety of A.T.

17. B.G. was completely unaware as to the matter the DCS representative wished to discuss, as no concerns as to the safety of A.T. had been raised previously, by DCS or otherwise.

18. Upon receiving this call, B.G., contacted her husband J.G., A.T.'s stepfather, as well as A.T.'s biological father, requesting they both attend the meeting as well.

19. At said meeting, the DCS representative began referring to an assault which occurred the week prior on September 18, 2019.

20. B.G. and J.G. represented to the DCS representative that they were unaware of any such event, and at no point had they been advised of such.

21. The DCS representative advised the three (3) that DCS had been alerted that A.T. was the victim of a sexual assault and sexual battery committed by another student, which occurred on school premises.

22. They were further advised the assailant had been taken to juvenile court and separated from the general student populace and placed in "Raider Academy," the functional equivalent of what one might refer to as "alternative school."

23. Further, the DCS representative advised that not only had the assailant sexually assaulted and sexually battered A.T., but he then proceeded to threaten the other children who had witnessed said assault with physical violence should they disclose what they had observed.

24. The DCS representative then scheduled wellness checks to examine all three (3) parents' homes, to which Plaintiff parents had no objection, willfully allowing the DCS representative to conduct her investigation to the extent she felt necessary.

25. The DCS representative scheduled appointments with B.G.'s other children to ensure their safety, as well.

26. Additionally, the DCS representative advised B.G. and J.G. that CMS required A.T. to write out and execute a statement as to the events that transpired in the absence of a parent or guardian.

27. The very next day, on September 24, 2019, B.G. and J.G. were served with a Mutual No Contact Order, the reason for which they were unaware.

28. Said Order was issued and entered on the 19th day of September, a week prior to the meeting with the representative of DCS.

29. The parents allowed A.T. to divulge the details of the sexual assault in her own time, and eventually it was discovered that this assault was not merely a "pat on the bottom," contrary to the account given to the DCS representative by CMS.

30. Instead, it was discovered that not only was the assault of a sexual nature, but such was also done forcefully, with A.T. being shoved up against a locker, molested and brutalized, which resulted not only in physical injuries, but psychological trauma.

31. The Friday of the same week, A.T. called her mother, B.G., requesting that she be picked up from school for fear of being sexually brutalized yet again by the very same assailant.

32. B.G. attempted to reassure her daughter that she was safe due to the Mutual No Contact Order; however, this did little to quell A.T.'s deep-seated fear and trepidation as represented to her mother.

33. On October 2, 2020, J.G. was served with a subpoena dated the 27th day of September 2019, requiring their presence at a hearing scheduled for December 12, 2019 to

5

Case 1:20-cv-00347-TRM-SKL   Document 18   Filed 02/19/21   Page 5 of 14   PageID #: 104

take place at Bradley County Juvenile Court, Case No. 19-00834.

34. On or about November 2, 2019, B.G. received an email from a teacher of A.T., requesting a meeting, stating A.T. was failing all of her classes.

35. The teachers at said meeting advised that A.T. was smart and capable, yet was failing to submit her homework and was "not trying" in class.

36. After discussing A.T.'s poor academic performance, the matter of A.T.'s sexual assault arose.

37. During the conference, one (1) of the three (3) teachers present advised that she was the individual who took A.T. to the CMS office following said sexual assault.

38. However, said teacher informed A.T.'s parents that A.T. was not the one to report the assault. Instead, the assault was reported by one of A.T.'s friends.

39. Additionally, said teacher advised that not only was A.T. in fear for her safety, but all of the students were afraid of the assailant.

40. This revelation demonstrates that Defendants had actual knowledge of A.T.'s assault, and yet none of them, or any other representative of CMS, saw fit to alert A.T.'s parents.

41. B.G. advised these three (3) teachers that all three (3) of the parents were unaware of the assault until they were confronted by DCS five (5) days after the event in question, and several days after the Mutual No Contact Order had been issued.

42. At the court date on December 12, 2019, A.T. displayed signs of fear, trepidation, overwhelming anxiety, embarrassment, and did not desire to even participate in the proceedings despite being the actual victim.

43. At said hearing, the Assistant District Attorney assigned to the matter, with the

6

Case 1:20-cv-00347-TRM-SKL   Document 18   Filed 02/19/21   Page 6 of 14   PageID #: 105

assailant's file in hand, advised B.G. and J.G. that their daughter's assailant already had an extensive record despite being a mere eleven (11) years of age at the time.

44. As of the date of the aforementioned Juvenile hearing, the assailant had failed to comply with Court-Ordered counseling.

45. The Assistant District Attorney advised B.G. and J.G. that the Court would issue an additional Order regarding the assailant's counseling, especially considering this was not the first time the assailant had sexually assaulted A.T.

46. This was the first time B.G. and J.G. were made aware that the sexual assault of which they had only recently been made aware was not an isolated incident, but had occurred several times in the past.

47. Subsequent to this, the Assistant District Attorney advised a representative from CMS that B.G. and J.G. had not been contacted by CMS. He stated such would be rectified; however, as of the date of this filing, B.G. and J.G. have still yet to be notified of the events complained of herein.

48. A.T. began exhibiting signs of severe depression, anxiety, and became withdrawn. This caused B.G. and J.G. to become fearful A.T. may wish to harm herself.

49. This entire ordeal resulted in not only mental anguish for A.T., but also for her parents, who felt they were unable to protect their own child.

50. Stated plainly, CMS denied B.G. and J.G. an opportunity to protect their child.

51. At no point did CMS attempt to separate A.T. from her assailant, resulting in additional emotional distress for A.T.

52. At no point did CMS advise B.G. and J.G. of the repeated sexual assaults of their daughter by another student.

53. The actions and inactions of CMS resulted in physical and emotional trauma suffered by not only A.T., but also by her parents.

54. Subsequently, A.T. began counseling at Hiwassee Mental Health, at which she was diagnosed with Post-Traumatic Stress Disorder. Accordingly, A.T. was prescribed medications so as to alleviate at least some of the symptoms which are the byproduct of the repeated sexual assaults.

55. Likewise, both B.G. and J.G. have begun counseling, and both have been prescribed antidepressants and anti-anxiety medications.

56. On October 19, 2020, A.T. placed a call to J.G., stating Defendants had placed her assailant in the very same class as A.T., resulting in further emotional trauma, forcing her to relive the events of the past while fearing another sexual assault, in spite of the No Contact Order previously issued by the Juvenile Court of Bradley County.

57. This further exemplifies callous and intentional indifference to Plaintiffs' rights and wellbeing, both physical and emotional.

58. These Defendants had actual knowledge of the multiple sexual assaults, actual knowledge that A.T.'s parents had not been notified of the same, yet nonetheless deliberately turned an indifferent eye to pervasive, repeated, egregious, and foreseeable sexual assaults upon the person of this child.

### V.     CAUSES OF ACTION

59. Plaintiffs bring the following causes of action in the counts below.

#### COUNT I. TITLE IX – CCSBE AND CMS

60. The foregoing factual averments are incorporated herein as though rewritten verbatim.

61. The sex-based harassment of the Plaintiff A.T. was severe, pervasive, and objectively offensive, and deprived A.T. of access to educational opportunities or benefits.

62. CCSBE and CMS created, tolerated, and subjected A.T. to a hostile educational environment under Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 681(a), because Plaintiff A.T. was treated disparately; suffered sexual assault, sexual battery, and other harassment; and CCSBE and CMS had a lack of adequate policies, training, and procedures, and deliberately failed to take appropriate preventive or remedial measures.

63. Moreover, CCSBE, CMS, their officials, and employees had actual knowledge of the harassment and chose not to seriously investigate or discipline the perpetrator.

64. CCSBE, CMS, its officials, and employees engaged in a pattern of behavior, a cover-up, to discourage students from reporting the sexual assaults.

## COUNT II. TITLE IX RETALIATION BY WITHHOLDING PROTECTIONS — CCSBE AND CMS

65. The foregoing factual averments are incorporated herein as though rewritten verbatim.

66. CCSBE and CMS officials discouraged those with actual information of the sexual assaults from reporting to appropriate authorities and failed to report the sexual assaults to A.T.'s parents.

67. Once law enforcement became involved, CCSBE, CMS, and its officials ignored the matter altogether, feigning as though the assault never happened, and refused to investigate the matter or otherwise comply with responsibilities of Title IX.

68. Even when CCSBE and CMS's deception had been revealed, they nonetheless still refused to acknowledge the assault or contact the parents of A.T., much less take steps to remedy the situation.

### COUNT III. VIOLATION OF THE FOURTEENTH AMENDMENT AND SECTION 1983 — ALL DEFENDANTS

69. The foregoing factual averments are incorporated herein as though rewritten verbatim.

70. Plaintiff A.T. enjoys the right as an American public-school student to personal security, bodily integrity, and Equal Protection of the Laws.

71. Defendants Esquinance, Keith, Pirkle, Lastoria, Cruz, and Laing were all State actors acting under color of State law.

72. All defendants subjected Plaintiff A.T. to violations of her right to bodily integrity and Equal Protection of the Laws by failing to take appropriate preventive measures; failing to adequately supervise and train (or engage in supervision); and by acting with manifest indifference to the sexual assault, sexual battery, bullying, and harassment of A.T.

73. The actions of CCSBE and CMS were taken pursuant to customs, policies, or practices of failing to investigate, failing to adequately train and supervise, and a historical indifference to the bodily integrity of students.

74. Defendants Esquinance, Keith, Pirkle, Lastoria, Cruz, and Laing were considered policymakers for the purpose of implementing and carrying on the aforesaid policies, customs, or practices.

### COUNT IV. MONELL LIABILITY FOR FAILURE TO TRAIN AND SUPERVISE (42 U.S.C. § 1983) — ALL DEFENDANTS

75. The foregoing factual averments are incorporated herein as though rewritten verbatim.

76. Defendants Esquinance, Keith, Pirkle, Lastoria, Cruz, and Laing were state actors working for CCSBE and CME. They worked under "color of state law" in failing to

appropriately prevent or remedy the sexual assaults.

77. Each defendant named herein violated A.T.'s right to equal access to an environment free from harassment and sexual assault, due to a policy or custom of failing to investigate, failing to take prompt remedial measures, failing to protect A.T., failing to provide a grievance procedure widely disseminated and capable of being understood, and failing to notify A.T.'s parents of the harassment and sexual assault, and acting with deliberate indifference to violence against A.T.. These failures proximately caused the injuries sustained by A.T.

78. Additionally, CCSBE and SME violated Plaintiffs' Fourteen Amendment right to equal protection by failing to properly train and supervise its employees in mandated investigative requirements.

79. The need to train its principal, vice-principal, teachers, counselors, SROs, and Title IX Coordinator is so obvious, and the inadequacy so likely to result in violation of constitutional rights, that CCSBE and CMS were deliberately indifferent and acted pursuant to a policy or custom of indifference to violence against its students. These failures proximately caused the injuries to A.T.

### COUNT V. NEGLIGENT OR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS — (ALL DEFENDANTS)

80. The foregoing factual averments are incorporated herein as though rewritten verbatim.

81. Defendants acted with intentional indifference to the multiple sexual assaults of A.T., failing to report the same to A.T.'s parents, and failure to employ appropriate remedial and preventative measures.

82. Defendants' failure to protect a minor child from sexual assault, with full

knowledge of said assault, and failure to notify the parents of the minor victim as to the same is so outrageous that such is not tolerated by society.

83. The negligent and intentional actions of the defendants resulted in severe, pervasive, and extensive emotional trauma in A.T., B.G., and J.G.

84. The negligent and intentional actions of the defendants is both the actual and proximate cause of the emotional distress sustained by Plaintiffs.

### COUNT VI. NEGLIGENCE PER SE — (ALL DEFENDANTS)

85. Defendants' failure to notify B.G. and J.G. of the multiple sexual assaults of their daughter is a violation of Tenn. Code Ann. § 37-1-605.

86. Tenn. Code Ann. § 37-1-605 was intended to ensure parents are advised of any sexual assault of their child in a timely manner, so as to afford the parents to take appropriate action.

87. Defendants' failure to uphold this statutory obligation is the actual and proximate cause of the mental distress and anguish incurred by Plaintiffs. The failure of Defendants to advise B.G. and J.G. of their daughter's assault resulted their inability to take measures to ensure their daughter's safety, ultimately resulting in additional sexual assaults of A.T.

### COUNT VII. VIOLATION OF THE TENNESSEE GOVERNMENTAL TORT LIABILITY ACT — (ALL DEFENDANTS)

88. The foregoing factual averments are incorporated herein as though rewritten verbatim.

89. Based upon the foregoing, Plaintiffs bring claims against all Defendants for their negligence, negligent supervision, negligent failure to train, and negligence per se, under the Tennessee Governmental Tort Liability Act, as found at Tenn. Code Ann. § 29-20-101, et

seq.

90. Defendants owed Plaintiffs common law and statutorily prescribed duties that were breached and are therefore liable under the Tennessee Government Tort Liability Act, Tenn. Code. Ann. § 29-20-205 for failure to exercise reasonable care to supervise and protect A.T., including from the foreseeable intentional acts of third parties that involved sexual assault and sexual battery of which the Defendants had actual knowledge, in addition to Defendants' failure to report A.T.'s multiple sexual assaults to B.G. and J.G.

## VIII. Damages

91. The foregoing factual averments are incorporated herein as though rewritten verbatim.

92. For the totality of their claims, Plaintiffs seek five million dollars ($5,000,000.00) in compensatory damages, and five million dollars ($5,000,000.00) in punitive damages.

93. In sum, Plaintiffs seek as damages payment appropriate for the mental suffering and pain for A.T.; payment appropriate for the mental suffering and pain for B.G.; payment appropriate for the mental suffering and pain for J.G.; payment of the costs of private education; reasonable attorneys' fees and costs; punitive damages against the individual defendants; injunctive relief to include appropriate policies, training, supervision, reporting requirements, observance of duties of Title IX officials, and monitoring; and any further relief at law or equity which may be appropriate.

## Jury Demand

Plaintiffs demand a jury be empaneled to try this Cause.

## Prayer for Relief

**WHEREFORE**, A.T., by and through her next friend, B.G., B.G. in her individual capacity, and J.G. in his individual capacity, pray that after all due proceedings are had that there be judgment rendered herein in their favor awarding compensatory and punitive damages befitting the severity of the injuries incurred by all three (3) Plaintiffs and the intentional indifference and concealment by Defendants of the event complained of herein.

Respectfully submitted,

*/s:/ Jonathan Taylor Thomas*
Jonathan Taylor Thomas, BPR #036278
*Attorney for Plaintiffs*
Loveman's Building
800 Market Street, Suite 215
Chattanooga, TN 37402
Phone: (423) 732-8005
Facsimile: (423) 723-8010
Email: taylor@jtthomaslaw.com

*/s:/ Russell Leonard*
Russell L Leonard, BPR #01491
*Attorney for Plaintiffs*
1016 W. Main St., Suite 3,
Monteagle, TN 37356
(931) 924-0447